UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:15-cv-30071-MGM

KATIE KING,

                Plaintiff

v.

MESTEK, INC.,

                Defendant

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DEFENDANT'S PARTIAL MOTION DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

## I.   INTRODUCTION

The Plaintiff, Katie King ("Plaintiff" or "King" hereinafter), respectfully requests that this Honorable Court deny the Defendant's, Mestek, Inc. ("Defendant" hereinafter), *Partial Motion to Dismiss the Plaintiff's Amended Complaint* ("Defendant's Motion" hereinafter) [19]. In the alternative, the Plaintiff requests that the Court convert the Defendant's Motion into one falling under Fed. R. Civ. P. 56, and postpone hearing on said Rule 56 motion until the Parties have conducted discovery and depositions and have filed supplemental memoranda. *See* Fed. R. Civ. P. 56(e) and (f).

## II.   STATEMENT OF FACTS

King was hired by the Defendant in or about July of 2012.  King worked as a full-time assistant controller at the Defendant's principal office location in Westfield, Massachusetts. Amended Compl. ¶ 4.

The Defendant is a corporation with a principal place of business located at 260 North Elm Street, Westfield, Hampden County, Massachusetts. During the Plaintiff's employment at

the Defendant, the Defendant employed more than fifty employees. The Defendant is an employer as defined by the FMLA. Amended Compl. ¶ 5.

King never received any form of reprimand and performed her job responsibilities well throughout the course of her employment with the Defendant. Amended Compl. ¶ 6.

In or about September of 2012, King sustained an injury to her right foot. As a result of the injury, King experienced chronic and severe pain in her right foot. This, in turn, affected King's ability to walk and stand. King was unable to walk without the use of crutches and was also restricted to wearing a walking air cast on her right foot for approximately six months thereafter. Amended Compl. ¶ 7. Shortly thereafter, it was determined that King's injury had triggered the onset of a medical condition. King was diagnosed with Complex Regional Pain Syndrome ("CRPS") in or about March of 2013. Caused by damage or malfunction of the central and peripheral nervous systems, CRPS causes the Plaintiff to experience severe and chronic pain. Amended Compl. ¶ 8.

This medical condition affects King's daily life activities (as set forth in Paragraphs 7, 21, 28 and 29 and as otherwise set forth in this Complaint) and amounts to a disability/handicap under state and federal law. Amended Compl. ¶ 9. In an attempt to control the pain, King was prescribed pain medication and underwent multiple injections. Amended Compl. ¶ 10.

In or about 2013, King was offered an open position in the Defendant's cost department. Having been assured that her position at the Defendant was not going anywhere, King declined the offer. Amended Compl. ¶ 11.

In or about March of 2014, the CRPS began to spread up King's right leg. Concerned that the CRPS would soon spread to all of King's limbs, King's physician had her undergo a trial, in or about February of 2014, with a spinal cord stimulator and then scheduled her to undergo surgery to insert the same on or about April 22, 2014. Amended Compl. ¶ 12. King immediately, on or about March 24, 2014, informed both the Defendant's human resources

department and her supervisor, Timothy Zambelli, that she was scheduled to undergo surgery on April 22, 2014.  King requested an accommodation in the form of time off from work in order to undergo the surgery and to heal from the same. Amended Compl. ¶ 13.

Having been employed at the Defendant in a full-time position for almost two years and needing to take time off due to her own medical condition, King was eligible to take her medical leave of absence under the FMLA.  King's FMLA leave was approved by the Defendant. Amended Compl. ¶ 14.

During the interim, King worked with a co-worker, Jeanne Moriarty, at the Defendant, to make sure that all of King's job duties had been taken care of before going out on her medical leave of absence. Amended Compl. ¶ 15.  On or about April 21, 2014, King emailed Ms. Moriarty to ask her a question on a particular allocation that had just been brought to King's attention that day.   King requested Ms. Moriarty's assistance with the allocation and simultaneously informed Ms. Moriarty that it was her last day at work before her medical leave of absence.  In response, Ms. Moriarty stated, in part, that King would have some "reconciliation work" to do upon her return from her medical leave of absence. Ms. Moriarty's email made King feel harassed and threatened which, in turn, made King uncomfortable about taking a medical leave of absence. Amended Compl. ¶ 16.

King reported Ms. Moriarty's email to Mr. Zambelli.  But instead of responding to King's concern, Mr. Zambelli instructed King, in a threatening manner, that she had to be on-call twenty-four hours a day during the duration of her medical leave of absence.  According to Mr. Zambelli, being "on-call" required King to answer any questions anyone at the Defendant may have and to come in to the office when necessary. King informed Mr. Zambelli that she would not be able to drive after the surgery and that this was part of the reason why she required a medical leave of absence. Without acknowledging King's concern, Mr. Zambelli reiterated that King needed to be available when needed. King again was harassed and threatened.   Mr.

3

Zambelli was essentially stating that if King did not comply with his demands that she would lose her job at the Defendant. King began to worry about her job security at the Defendant. Amended Compl. ¶ 17.

King then discussed the situation with Matt Brown, human resources manager for the Defendant, over the telephone. King informed Mr. Brown that she was being harassed by both Ms. Moriarty and Mr. Zambelli based upon her disability and request for accommodation, including leave under the FMLA, and that her job was threatened.  Mr. Brown informed King that she should not give any information to anyone in the Defendant's accounting department, including Mr. Zambelli, and that if they wanted to get in contact with her while she was out on medical leave that they would have to do so through the Defendant's human resource department. Mr. Brown reassured King that her job was not jeopardy. Amended Compl. ¶ 18.

On or about April 22, 2014, King went into surgery. The surgery entailed the insertion of a spinal cord stimulator, an electrical generator, which emits electrical currents to the spinal column in an attempt to mitigate the chronic pain.  The original expected duration of King's medical leave of absence was two weeks; however, after a follow-up appointment with her physician, King's physician determined that she would require an additional two weeks of medical leave. Amended Compl. ¶ 19.  King continued to check in with the Defendant on a weekly basis thereafter and provided additional documentation from her physician upon the Defendant's request.  Amended Compl. ¶ 20.

King's physician issued King restrictions of no bending, lifting or stretching which were to remain in place for the following three to four months (i.e., until July/August of 2014).  These restrictions were included in King's release to work form which the Defendant required prior to King's return to work. Amended Compl. ¶ 21.

King returned to work on or about May 21, 2014.  Upon King's return to work, a checklist for the month of June had been left on her desk. King proceeded to perform the duties

4

contained on the list, however, Mr. Zambelli and King's co-workers significantly interfered with King's ability to perform her job functions after her return to work. King's coworkers and supervisor refused to speak to her.  There are other examples of the hostile work environment as well.  Amended Compl. ¶ 22.

The "silent treatment" continued through June 2, 2014, when King was asked to attend a meeting with the Defendant's vice president, Joann Berwald and her supervisor, Mr. Zambelli. Amended Compl. ¶ 23.  During said meeting, Ms. Berwald and Mr. Zambelli informed King, without any further explanation, that her position had been eliminated and requested that King sign a separation agreement. Ms. Berwald and Mr. Zambelli also stated during this meeting that "everything [they were] doing [was] legal." Amended Compl. ¶ 24.

King has no knowledge of any other positions at the Defendant having been eliminated. While King was out on medical leave, the Defendant had filled the open position in the cost department.  Amended Compl. ¶ 25.  Upon information and belief, another staff accountant (without a disability) at the Defendant continued to perform King's job responsibilities after the termination of King's employment. Amended Compl. ¶ 26.

A week prior to the afore-mentioned meeting, King's insurance company had submitted an Explanation of Benefits (EOB) to both King and the Defendant, a self-insured company. Amended Compl. ¶ 27.

King must use the spinal cord stimulator twenty-four hours a day, seven days a week in order to control King's chronic pain and keep it from spreading any further. Amended Compl. ¶ 28.  Notwithstanding the spinal cord stimulator, King still suffers from chronic pain caused by CRPS. King still experiences chronic pain in her lower back and periodic "flare-ups" in her right foot and leg as well.  King's neurological functioning and ability to walk, stand, and sleep are substantially limited and continue to be substantially limited by CRPS to date. Amended Compl. ¶ 29.

King has satisfied the prerequisites to filing suit. Amended Compl. ¶ 30.

## III.   ARGUMENT

### A.  Motion to Dismiss - Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]. *Gargano v. Liberty Intern. Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009)(citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 [1st Cir. 2008]).  Moreover, "[t]he general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). "This short and plain statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Id.* at 48-9 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 [2007]).   The Plaintiff's facts must "contain enough meat to support a reasonable expectation that an actionable claim may exist." *Andrew Robinson Int'l v. Hartford Fire Ins.*, 547 F.3d 48, 51 (1st Cir. 2008)(citing *Bell Atlantic Corp. v. Twombly* and *Morales-Tanon v. P.R. Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008)).

The U.S. Supreme Court's decision in *Twombly*, reaffirmed in *Ashcroft v. Iqbal*, requires that a complaint allege "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 559.  The "plausible entitlement to relief" standard replaces the standard established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007).  Despite this change in the old standard, *Twombly* makes clear that "[a]sking for plausible grounds [ ] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the alleged illegal conduct]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at

6

556. The *Twombly* decision does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

### B. Prima Facie Case of Discrimination Not Required

Importantly, the Supreme Court in *Twombly* noted that its "analysis does not run counter to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'" 550 U.S. at 569-570.[1]  In *Swierkiewicz*, the Supreme Court noted that the *McDonnell Douglas* framework is not applicable in every employment discrimination case and, thus, it would "seem[] incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if [for example] direct evidence of discrimination is discovered." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (2002)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 [1973]). Thus, a complaint, in an employment discrimination case, must "contain sufficient factual matter to state a claim to relief that is plausible on its face," and satisfaction of the plausibility requirement does not require establishing a prima facie case of discrimination at the pleading stage. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 51 (1st Cir. 2013).

In sum, King is only required to satisfy the requirements of Fed. R. Civ. P. 8(a) and, when determining whether or not King's employment discrimination complaint has satisfied those requirements, the court must determine whether King is entitled to offer evidence to support her claims and not whether she will ultimately prevail.

### IV.   KING'S CLAIMS AGAINST THE DEFENDANT

In Counts I and VII, the Plaintiff did allege real or perceived disability discrimination and harassment (Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq.; M.G.L. c.

---

[1] Importantly, "the *Swierkiewicz* holding remains good law" despite the Supreme Court's subsequent decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Rodriguez-Reyes* v. *Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)(noting that the Supreme Court cited *Swierkiewicz* in *Bell Atlantic Corp. v. Twombly* with approval and, although not mentioned, *Iqbal* is "wholly consistent with *Swierkiewicz*").

151B).  In Counts II and VIII, the Plaintiff did allege real or perceived disability harassment (ADA, 42 U.S.C. § 12101 et. seq.; M.G.L. c. 151B).  In Counts III and IX, the Plaintiff did allege denial of reasonable accommodations (ADA, 42 U.S.C. § 12101 et. seq.; M.G.L. c. 151B). In Counts IV and X, the Plaintiff did allege retaliation (ADA, 42 U.S.C. § 12101 et. seq.; M.G.L. c. 151B).  In Count V, the Plaintiff did allege violations generally of the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2611, et. seq.). In Count VI, the Plaintiff did allege retaliation as a specific violation of the FMLA (29 U.S.C. § 2611, et. seq.).

Retaliation is a separate cause of action under the ADA, FMLA and M.G.L. c. 151B. *See* 42 U.S.C. § 12101 et. seq., 29 U.S. C. § 2615 and M.G.L. c. 151B, § 4.  A plaintiff need not prove an underlying case of discrimination to prevail on retaliation claims. *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 477 (1st Cir. 2003).  Similarly, a plaintiff need not prove an underlying claim of a denial of substantive FMLA entitlements to prevail on an FMLA retaliation claim. *See generally Hodgens v. General Dynamics Corporation*, 144 F.3d 151 (1st Cir. 1998).

A. **ADAA and M.G.L. c. 151B – Disability/Handicap Discrimination and Harassment (Counts I, II, VI and VII).[2]**

Both the Americans with Disabilities Act ("ADA") and M.G.L. c. 151B make it unlawful for an employer to discriminate against a qualified individual on the basis of disability in regard to the discharging of employees and other terms, conditions, and privileges of employment. 42 U.S.C.A. § 12112(a); M.G.L. c. 151B § 4(16). Although the ADA uses the term "disability" and Chapter 151B the term "handicap," both terms are defined as: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of having such an impairment; or (3) being regarded as having such an impairment. 42

---

[2] Although the Defendant's Motion states that they are only moving for dismissal of Plaintiff's disability harassment claims, Counts II and VII, Defendant's Motion still references Plaintiff's disability discrimination claims throughout and, therefore, the Plaintiff addresses Counts I and VI herein as well as Counts II and VII. The Defendant also cites to Count VIII of the Plaintiff's Amended Complaint in reference to Plaintiff's disability harassment claims, however, Plaintiff's disability harassment claims are Counts I and VII.

U.S.C.A. § 12102(1); MCAD Guidelines: Employment Discrimination of Basis of Handicap Sec. II(A)(1).

Given the similarities between the statutory language, Chapter 151B was commonly noted as the "state analogue" of the ADA prior to the Americans with Disabilities Amendments Act ("ADAA") of 2008. *See Faiola v. APCO Graphics, Inc.*, 629 F.3d 43, 45 (1st Cir. 2010). Despite their similarities, however, state and federal courts differed with respect to their interpretations of the terms "handicapped" and "disabled" under the respective statutes. *See Faiola*, 629 F.3d at 45 (1st Cir. 2010)(noting that "instances in which Massachusetts law diverges from the ADA" do exist). For example, in *Dahill v. Police Department of Boston*, the Massachusetts Supreme Judicial Court interpreted the term "handicapped" broadly under Chapter 151B and specifically declined to adopt the United States Supreme Court's holding in *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999), which required the use of mitigating or corrective devices to be considered when determining whether an employee was disabled under the ADA. 434 Mass. 233, 240, 242 (2001).

In 2008, Congress amended the ADA in an effort to provide broad coverage of individuals to the maximum extent permitted under the ADA. Although the ADA's original definition of "disability" remained unchanged, Congress stated that:

> the primary object of attention in cases brought under the ADA should be whether the entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis.

*Gil v. Vortex, LLC*, 697 F.Supp.2d 234, 238 (D.Mass. 2010)(internal citations omitted). Signed into law in September of 2008, the ADAA became effective on January 1, 2009 and served to overturn the Supreme Court's holdings in *Sutton* and *Toyota* which had created a demanding standard, subsequently followed by lower courts, for individuals to qualify as disabled under the

ADA. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).

In 2010, the Massachusetts Commission Against Discrimination ("MCAD") expressly adopted the "substantially limits" provisions of the ADAA and the regulations of the Equal Employment Opportunity Commission ("EEOC") that interpret the same. Specifically, the MCAD found that:

> [T]he Commission has traditionally interpreted the definition of handicap broadly to effect protections for those employees who have suffered impairments that affect their ability to do their jobs but who are still capable of carrying out the essential functions of the job. This liberal interpretation of G.L. c. 151B is also consistent with Congress's intent in its recent amendments to the ADA, and the EEOC's interpretive guidelines and its proposed pending regulations.

*Massachusetts Commission Against Discrimination v. Roadway Express, Inc. n/k/a YRC, Inc.*, 2010 WL 3157771, *13 (2010). *See also Gil v. Vortex, LLC*, 697 F.Supp.2d 234, 239 (D.Mass. 2010)(citing *Dahill v. Police Dep't of Boston*, 434 Mass. 233 [2001] "[t]he court is … confident that the Supreme Judicial Court (SJC) would apply the same revised [ADAA] standard in interpreting the term disability for purposes of Chapter 151B").

Thus, where King became disabled, engaged in protected activity and was retaliated against in 2014, i.e. after January 1, 2009, the ADAA is appropriately applied to King's claims against the Defendant. *Thornton v. United Parcel Serv., Inc.,* 587 F.3d 27, 34 (1st Cir. 2009).

Moreover, when interpreting the term "handicap" under Chapter 151B, the Court should apply the same "liberal interpretation" of the term "disability," consistent with the ADAA, when interpreting King's Chapter 151B claims against the Defendant.[3]

1. Prima Facie Case of Disability Discrimination and Harassment

The Defendant argues that King must set forth facts sufficient to satisfy a prima facie case of disability discrimination and harassment in her Complaint in order to survive a motion to

---

[3] The term "disability" is used to refer to both "disability" under the ADAA and "handicap" under Chapter 151B.

dismiss.  However, as noted above, it is well settled that the prima facie case is an evidentiary model, not a pleading standard and, therefore, King need not establish a prima facie case of discrimination at the pleading stage of litigation. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 51 (1st Cir. 2013). Instead, the Court, remaining mindful of the fact that discovery has not yet commenced, must determine whether King "has pleaded enough facts *in toto* to make entitlement to relief plausible in light of the prima facie standard *that will apply at trial*." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014)(emphasis supplied).

In order to establish a prima facie case of disability discrimination under the ADAA and Chapter 151B, a plaintiff must present evidence that: (1) she is disabled within the meaning of the statute; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she was subject to an adverse employment action. *Ruiz Rivera v. Pfizer Pharms.*, LLC, 521 F.3d 76, 82 (1st Cir. 2008).  Under Chapter 151B, a plaintiff must also establish an additional prima facie element – that the position she had occupied remained open and the employer sought to fill it. *Dartt v. Browning-Ferris Industries, Inc.*, 427 Mass. 1, 3 (1998).

        a.   King Was A Qualified Disabled Employee.

King easily meets her burden as to the first prong of the *prima facie* case. As discussed above, the definition of the terms "disability" and "handicap" under the ADAA and Chapter 151B are similarly defined as: (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment. 42 U.S.C. 42 §12102(1); M.G.L. c. 151B, § 1(17). *See also Faiola v. APCO Graphics, Inc.*, 629 F.3d 43, 47 n. 2 (1st Cir. 2010).  Major life activities include, but are not limited to, caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, working, sitting, standing and lifting. 42 U.S.C. § 12102(2)(A); M.G.L. c. 151B, § 1(20).

Importantly, and as discussed above, the primary focus of cases brought under the ADAA should be "whether covered entities have complied with their obligations and whether the discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." *See e.g. Gil v. Vortex, LLC*, 697 F.Supp.2d 234, 239-240 (D.Mass. 2010)(denying defendant's motion to dismiss complaint where plaintiff is not required, under the "relaxed disability standard of the [ADAA]" to plead specific facts demonstrating how his physical impairment substantially limited him in his major life activities). Whether an impairment substantially limits an individual in a major life activity is not meant to be a demanding standard, is determined on case-by-case basis and should be construed broadly in favor of expansive coverage, to the maximum extent permitted by the ADAA. *Id*. at 238-240.

King was diagnosed with Complex Regional Pain Syndrome ("CRPS") in or about March of 2013. Amended Compl. ¶ 8. Caused by damage or malfunction of the central and peripheral nervous systems, CRPS substantially limits the functioning of King's neurological system and causes King to experience severe and chronic pain. Amended Compl. ¶¶ 7, 8, 29. CRPS initially caused King to experience severe and chronic pain in her right foot but later spread to her right leg and back as well. Amended Compl. ¶¶ 7, 28, 29. These symptoms substantially limit, and continue to substantially limit, King in her daily life activities of standing, walking, sleeping and working. Amended Compl. ¶ 29. In or about February of 2014, King's CRPS symptoms began to worsen and began to spread up to King's right leg. Concerned that the CRPS would soon spread to all of the Plaintiff's limbs, the Plaintiff's physician had her undergo a trial, in or about February of 2014, with a spinal cord stimulator and then scheduled the Plaintiff to undergo surgery in order to insert the same on or about April 22, 2014. Amended Compl. ¶ 12. On or about March 24, 2014, King informed the Defendant's human resources department and her

supervisor, Timothy Zambelli, that she was scheduled to undergo surgery on April 22, 2014. Amended Compl. ¶ 13. King requested an accommodation in the form of time off from work in order to undergo the surgery and to heal from the same. Amended Compl. ¶ 13. Having been employed at the Defendant for almost two years and needing to take time off due to her own serious medical condition, the Plaintiff was eligible to take her medical leave of absence under the FMLA. The Plaintiff's FMLA leave was approved by the Defendant. Amended Compl. ¶ 14.

On or about April 22, 2014, King went into surgery. The surgery entailed the insertion of a spinal cord stimulator, an electrical generator, which emits electrical currents to the spinal column in an attempt to mitigate the chronic pain. The original expected duration of King's medical leave of absence was two weeks; however, after a follow-up appointment with her physician, King's physician determined that she would require an additional two weeks of medical leave. Amended Compl. ¶ 19.

King continued to check in with the Defendant on a weekly basis thereafter and provided additional documentation from her physician upon the Defendant's request. Amended Compl. ¶ 20. King's physician issued King restrictions of no bending, lifting or stretching which were to remain in place for the following three to four months (i.e., until July/August of 2014). These restrictions were included in King's release to work form which the Defendant required prior to King's return to work. Amended Compl. ¶ 21.

King returned to work on or about May 21, 2014. Upon the Plaintiff's return to work, a list of job responsibilities that needed to be completed for the following month of June had been left on her desk. The Plaintiff attempted to perform the duties contained on the list, however, Mr. Zambelli and the Plaintiff's co-workers significantly interfered with the Plaintiff's ability to perform her job functions after her return to work. The Plaintiff's co-workers and Mr. Zambelli refused to speak to her. There are other examples of the hostile work environment as well. Amended Compl. ¶ 22.

The "silent treatment" continued through June 2, 2014, when King was asked to attend a meeting with the Defendant's vice president, Joann Berwald and King's supervisor, Mr. Zambelli.   Amended Compl. ¶ 23.   During said meeting, Ms. Berwald and Mr. Zambelli informed King, without any further explanation, that her position had been eliminated and requested that King sign a separation agreement. Ms. Berwald and Mr. Zambelli also stated during this meeting that "everything [they were] doing [was] legal." Amended Compl. ¶ 24.

King has no knowledge of any other positions at the Defendant having been eliminated. While King was out on medical leave, the Defendant had filled the open position in the cost department that had previously been offered to her. Amended Compl. ¶ 25. Upon information and belief, another staff accountant (without a disability) at the Defendant continued to perform King's job responsibilities after the termination of King's employment. Amended Compl. ¶ 26.

King must use the spinal cord stimulator twenty-four hours a day, seven days a week in order to control the chronic and severe pain and to keep it from spreading any further. Amended Compl. ¶ 28.   Notwithstanding the spinal cord stimulator, King still suffers from chronic and severe pain caused by CRPS. King still experiences chronic pain in her lower back and periodic "flare-ups" in her right foot and leg as well. King's neurological system functioning and ability to walk, stand, and sleep continue to be substantially limited by CRPS to date. Amended Compl. ¶ 29.

Clearly, a medical condition, caused by damage or malfunction of the central and peripheral nervous systems, which results in chronic and severe pain, requires the insertion of a spinal cord stimulator in an effort to control/minimize the pain and nonetheless still affects King's ability to walk, stand and sleep is sufficient to establish that King is substantially limited in these major life activities. *See* 29 C.F.R. § 1630.2(h)(1), (i)(1)(i)-(ii), j(3)(iii); Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act.

It is also important to note that a plaintiff is not required to demonstrate that her physical impairment imposes a substantial limitation on more than one major life activity in order to be covered under the ADAA. *Id.* at § 1630.2(j)(1)(viii). A plaintiff is similarly not required to provide additional examples of how the limitation also affects her performance of activities that are central to daily life. *See* 29 C.F.R. Appendix to Part 1630, § 1630.2(j)(1)(viii). King is not required to demonstrate that her substantial limitations on neurological function, bending, lifting, stretching, walking, standing  and sleeping made/make her unable to perform activities of daily living that require the same in order to be considered substantially limited in performing said major life activities. *See* 29 C.F.R. § 1630.2(j)(1)(viii). Thus, King has set forth sufficient facts for which to establish that she suffered a physical impairment which substantially limited her in a major life activity (i.e., bending, lifting, stretching, walking, standing and sleeping) which is sufficient to state a plausible claim to relief on the face of the Complaint. *See Gil v. Vortex, LLC*, 697 F.Supp.2d 234, 239-240 (D.Mass. 2010).

As to the second prong, King can show that she was a qualified person able to perform the essential functions of her job with or without reasonable accommodation. The ADAA and Chapter 151B define a qualified disabled person as one who is capable of performing the essential functions of her job, or who would be capable of performing the essential functions of her job, with reasonable accommodations. M.G.L. c. 151B, § 1(16).   Indeed, King has established that: (1) she was employed by the Defendant for approximately two years as an assistant controller; (2) she did not receive any form of disciplinary action against her during her employment; and (3) after requesting a medical leave of absence to undergo spinal surgery in or about April of 2014, King was able to perform the essential functions of her job with reasonable

accommodations (i.e. leave under the FMLA, and bending, lifting and stretching restrictions).[4] Amended Compl. ¶¶ 4, 6, 13, 14, 21.

> b.  King Was Regarded As Disabled By The Defendant

The Defendant next argues that King must establish facts in her Complaint demonstrating that the Defendant regarded her as disabled/handicapped.  The Defendant's argument, however, is based upon pre-ADAA case law and, consequently, misplaced. *See e.g. Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 48 n. 9 (1st Cir. 2011); *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 80 n. 2 (1st Cir. 2008).  The EEOC's regulations and post-ADAA case law clearly demonstrate that a plaintiff, under the regarded-as prong of the disability definition, is not subject to any type of functional test.  Rather, "the fact that an individual was discriminated against because of a perceived or actual impairment is sufficient" to withstand a motion to dismiss. *Gil v. Vortex, LLC*, 697 F.Supp.2d 234 (2010)(internal citations omitted); *see also*, *Fleck vs. WILMAC Corp.*, 2011 WL 1899198 (E.D. Penn. May 19, 2011)("[i]n contrast to the pre-amendment ADA, an individual is 'regarded as' disabled under the ADAA "whether or not the impairment limits or is perceived to limit a major life activity").

> c.  King Suffered An Adverse Employment Action.

The third and final prong of a prima facie case of discrimination under the ADAA, requires King to demonstrate that she was subjected to an adverse employment action. *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008). Clearly, having been terminated without explanation from her approximately two-year tenure of employment with the Defendant, King has established the third prong of her prima facie case of discrimination under the ADAA and Chapter 151B. Amended Compl. ¶¶ 22-24. Under Chapter 151B, King must also establish a fourth element – that King's position remained open and the Defendant sought to fill it. *Dartt v.*

---

[4] These restrictions were included in the Plaintiff's release to work form which the Defendant required prior to the Plaintiff's return to work. Amended Compl. ¶ 21.

*Browning Ferris Industries,* 427 Mass. 1, 3 (1998). King is not, however, required to demonstrate that the Defendant discriminated against other disabled employees or treated non-disabled employees more favorably in order to survive a motion to dismiss. Such evidence, as well as evidence regarding replacement employees, is often uncovered during the discovery phase of litigation and, thus, is not required at the initial pleading stage. *Garayalde–Rijos v. Municipality of California*, 747 F.3d 15, 8 n.8 (2014)(citing *Rodriguez–Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014)).

2. <u>Disability Harassment</u>

In order to establish a prima facie case of harassment based upon a disability, King must also demonstrate that she was subjected to unwelcome harassment based upon her disability that was both subjectively and objectively severe and/or pervasive in nature and that some basis for employer liability has been established. *O'Rourke v. City of Providence*, 235 F.3 713, 728 (1st Cir. 2001); *Ward v. Mass. Health Research Inst.*, 48 F.Supp.2d 72, 80 (D.Mass.1999)(*rev'd on other grounds*, 209 F.3d 29 [1st Cir. 2000]).

As discussed above, King need not establish a prima facie case of harassment at the pleading stage of litigation. *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 51 (1st Cir. 2013)(explaining that when discovery has not yet commenced the court need only determine whether the plaintiff "has pleaded enough facts *in toto* to make entitlement to relief plausible in light of the prima facie standard that will apply at trial"). *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014). Moreover, whether or not "in the totality of the circumstances, the alleged conduct is sufficiently severe and/or pervasive to 'interfere with a hypothetical reasonable person's work performance'" is ultimately up to the fact-finder to determine. *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008)("the hostility vel non of a workplace does not depend on any particular kind of conduct'")(citing *Quick v. Donaldson Co.*,

90 F.3d 1372, 1379 (8th Cir.1996)(internal quotation marks omitted); *Messina v. Araserve, Inc.*, 906 F. Supp. 34, 36 (D.Mass. 1995); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. at 678).

Nonetheless, King believes that she has plead sufficient facts, discussed in detail above, "*in toto* to make entitlement to relief plausible." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014).

B. **Denial of Reasonable Accommodations (Counts III and IX).**

    1. This Court Has Subject Matter Jurisdiction over King's Reasonable Accommodations Claims under Both the ADAA and M.G.L. c. 151B.

King filed her Charge of Discrimination ("Charge") with the Massachusetts Commission Against Discrimination ("MCAD"), dually filed with the Equal Employment Opportunity Commission ("EEOC"), *pro se* on or about June 5, 2014.   King's Charge alleges generally that the Defendant discriminated and retaliated against her in violation of the ADAA and M. G. L. c. 151B and also contains reference to King's leave under the FMLA. *Id.*

The requisite filing of an administrative charge with a state and/or federal agency prior to filing a civil action in court serves two purposes: (1) to provide the administrative agency with the "opportunity to investigate and to conciliate" the complainant's discrimination claims; and (2) to "provide notice to the defendant of potential liability." *Windross v. Village Automotive Group, Inc.*, 71 Mass.App.Ct. 861, 863-64 (2008)(citing *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 531 [2001]).   Although the "scope of the investigation rule," limits a plaintiff's subsequent civil action claims to "matters alleged in the administrative [charge of discrimination]," the "matters alleged" in an administrative charge are in no way "'a blueprint for the litigation to follow.'" *Id*. at 864.   A claim falls within the scope of an administrative charge so long as the core facts for which the claim rests were present in the administrative

charge.  This, in turn, "fairly places [the issue] before the [administrative] agency." *Id*. at 865-866 (quoting *White v. New Hampshire Dept. of Corrections*, 221 F.3d 254, 263 [1st Cir. 2000] "the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleading which may follow"); *see also*, *Everett*, 453 Mass. at 603 (the "scope of the investigation" rule allows "a claim that is not explicitly stated in the administrative complaint [to] be asserted in the subsequent [court] action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover")( quoting *Windross*, 71 Mass.App.Ct.).  Moreover, a plaintiff's subsequent claims in a civil action, having included the "core facts" for which it rests in the administrative charge, will be allowed even if the administrative agency failed to investigate the particular claim.  "An administrative charge need only place an administrative agency on notice "of an alternative basis for discrimination ...." *Conroy v. Boston Edison Co.*, 758 F.Supp. 54, 58 (D.Mass.1991).

The Defendant's reliance on *Furtado v. Standard Parking Corp.*, a non-binding district court case, is misplaced for a variety of reasons. 820 F.Supp.2d 261. In *Furtado*, the plaintiff's failure to accommodate claims were dismissed on the defendants' motion for summary judgment for two reasons.  First, the plaintiff's administrative charge was limited to facts underlying his claims of disability discrimination and retaliation against the defendant only and focused almost entirely on the plaintiff's termination of employment.  The plaintiff's administrative charge, lacking any factual support for such a claim, made it unlikely that a reasonable accommodation claim would fall within the scope of the administrative agency's investigation. *Id*. at 275-76 ("… termination-focused disability discrimination claim and [] reasonable accommodation claim are based upon sets of facts that are distinct both substantively and temporally") citing *Lattimore*, 99 F.3d at 465). Moreover, even assuming that such a claim could fall within the administrative agency's investigation into the plaintiff's administrative charge, the plaintiff, after having retained counsel, stated "expressly" in his rebuttal to the defendants' position statement that he

19

was not bringing a failure to accommodate claim against the defendants.  This in turn, deterred the administrative agency from any investigation into the same and, consequently, "conveyed to the [d]efendants that the scope of their potential liability would not include a failure to accommodate claim." The court, therefore, concluded that the plaintiff had failed to satisfy the purpose of the requisite administrative filing, i.e. to provide the administrative agency with an opportunity to investigate and conciliate claims and provide notice to the defendant(s) of potential liability. *Id.* at 274-275. Second, and notwithstanding the foregoing, the court found that the plaintiff's reasonable accommodation failed as a matter of law where the accommodations that were requested were neither reasonable nor required under the ADA or M.G.L. c. 151B. *Id.* at 277.

Whether or not the "elements of a claim fall within the scope of an [administrative agency's] investigation presents a question of law for judicial determination." *Pelletier v. Town of Somerset*, 458 Mass. 504, 515 (2010).  In the instant matter, King's reasonable accommodation claim is grounded solely upon facts that were present in her administrative charge which King filed *pro se*.[5]  Specifically, King's reasonable accommodation claim is based upon the following: (1) King required a two week medical leave of absence in order to undergo surgery for her medical condition; (2) King requested a two week medical leave of absence which was approved; (3) King's medical leave of absence was protected by the FMLA; (4) After the initial two-week period, King's physician determined that she would require another two weeks for which to heal from the surgery; (5) King's physician issued her physical restrictions on lifting, bending and stretching; (6) King's employment, without explanation, was terminated just days after she returned to work from her medical leave of absence. *See* Def.'s Exhibit 1 attached to Def.'s Motion at pg. 2, ¶ ¶ 2, 5, 7. Clearly, King's  reasonable accommodation claim

---

[5] The charges contained within an administrative charge, filed by *pro se* complainant, must be interpreted by the court "liberally [] in order to afford the complainant the benefit of any reasonable doubt." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996) (citing *Westphal v. Waukesha Dresser/Waukesha Engine Div.*, 855 F.Supp. 1009, 1015 (E.D.Wis.1994); *Pickney v. American Dist. Tel. Co.*, 568 F.Supp. 687, 690 (E.D.Ark.1983)).

against the Defendant, and the underlying facts for which the claims rest, were all present in the administrative charge and, unlike *Furtado*, would have reasonably fell within the scope of the administrative agency's investigation into King's claims of discrimination.[6] 820 F.Supp.2d 261 (2011).

2. King Has Established Viable Claims For Denial Of Requested Accommodations Under Both the ADAA and M.G.L. c. 151B.

Having established that she is a qualified disabled person under the ADAA and Chapter 151B, King must satisfy an additional three elements in order to make out a prima facie case of a denial of reasonable accommodations. King must show that: (1) she requested a reasonable accommodation; (2) she was refused the requested reasonable accommodation by the Defendant; and (3) she suffered harm as a result of the Defendant's refusal. *See Alba v. Raytheon Co.,* 441 Mass. 836, 843 n. 9 (2004); *Smith v. Bell Atl.,* 63 Mass.App.Ct. 702, 711 (2005).

King's request for a medical leave of absence, due to her disability, constitutes a request for a reasonable accommodation protected by the ADAA and M.G.L. c. 151B. *See Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 650 (1st Cir.2000); *Criado v. IBM Corp.*, 145 F.3d 437, 443-444 (1st Cir. 1998); *Russell v. Cooley Dickinson Hospital, Inc.*, 437 Mass. 443, 455-456 (2002); *see also*, *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th Cir. 1998)(citing *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 71–74 [1986] "[m]edical leave as an accommodation is not a novel concept"). If, as in the present case, an employee takes their qualifying medical leave under the FMLA, their leave may also be covered as a reasonable accommodation under the ADAA and M.G.L. c. 151B.

Although King's request for medical leave was seemingly approved by the Defendant, the same ultimately became an ineffective accommodation for two reasons: (1) Mr. Zambelli demanded and threatened King that she had to be available twenty-four hours a day to come into

---

[6] The Plaintiff has no record of the Defendant having filed a position statement in response to King's administrative charge which was filed *pro se* on or about June 5, 2014. King's claims were voluntarily withdrawn from the MCAD on August 28, 2014 and from the EEOC on January 21, 2015.

work when needed during her leave; and (2) King's employment was terminated just seven business days after she returned to work. Amended Compl. ¶¶ 23, 24. Employers are required to hold an employee's position open while they are out on medical leave. *See* EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, 2002 WL 31994335 at * 15.  The Defendant never informed King that they would be unable to hold her position while she was out on medical leave (i.e. that the same would put an undue hardship upon the Defendant).  Even assuming, *arguendo*, that holding King's position open was an undue hardship on the Defendant, the Defendant was required to make an effort to relocate King into another position for which she was qualified. Notably, the Defendant believed that King had been qualified to perform the responsibilities of an open position in the Defendant's cost department prior to her medical leave of absence but decided to fill that position while King was out on medical leave. Amended Compl. ¶¶ 11, 25.  A failure to reinstate an employee to their former position or an equivalent position consequently coverts the medical leave into an ineffective accommodation.  2002 WL 31994335 at * 15.

Finally, it is well established that termination is an adverse employment action which satisfies the last prong of King's prima facie case. *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008)(quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 [7th Cir. 1993]).

## C. **FMLA – Interference (Count V)**

### 1. King Has Established A Viable Claim For Interference Under The FMLA.

The FMLA contains "prescriptive" and "proscriptive" rights.  *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-160 (1st Cir. 1998).  The FMLA statute entitles eligible employees up to twelve work weeks of unpaid leave (continuous or intermittent) per year when an employee has a serious health condition which makes them unable to perform the functions of their job. 29 U.S.C. § 2612(a)(1), (b); 29 C.F.R. § 825.117. An eligible employee is also entitled

"to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." *Hodgens*, 144 F.3d at 159 (internal citations omitted).  According to the First Circuit, "[t]hese rights are essentially prescriptive, 'set[ting] substantive floors' for conduct by employers, and creating 'entitlements' for employees." *Id*. With an interference claim, "[t]he employer's subjective intent is not relevant" since "[t]he issue is simply whether the employer provided its employee with the entitlements set forth in the FMLA." *Sampson vs. Arbour-Fuller Hosp.*, 2012 WL 5386099 *11 (D.Mass. Nov. 2, 2012)(citing *Hodgens*, 144 F.3d at 159).

In order to establish a claim of interference under the FMLA, a plaintiff must show that: (1) she was an eligible employee as defined by the statute; (2) she was employed by an employer covered by the FMLA; (3) she was qualified for FMLA benefits; (4) she gave her employer notice; and (5) her employer denied her benefits for which she was entitled to under the FMLA. *Surprise v. Innovation Group, Inc./First Notice Systems, Inc.*, 925 F. Supp. 2d 134, 145 (D.Mass. 2013)(citing *Furtado v. Standard Parking Corporation*, 820 F. Supp. 2d 261, 280 (D.Mass. 2011)).

King began her employment with the Defendant as a full-time assistant controller in or about July of 2012 and continued in this capacity until the termination of her employment on or about June 2, 2014. Amended Compl. ¶¶ 4, 22, 24.  The Defendant employs more than fifty employees and is an employer as defined by the FMLA statute, 29 U.S.C.A. § 2611(4)(A)(i). Indeed, the Defendant approved King's request for medical leave and had her take the same under the FMLA which began in or about April of 2014. Amended Compl. ¶¶ 13, 14.  Thus, King was an eligible employee, employed by a covered employer, and was qualified for leave under the FMLA statute.

As for the fourth prong of her prima facie case, an eligible employee qualified for leave under the FMLA must give her employer appropriate notice of her need for FMLA leave. 29

U.S.C. § 2612(e)(2) (2004). Generally, an employee must give her employer notice as soon as the need for leave becomes foreseeable. However, when the need for leave is not foreseeable, an employee is required to give her employer notice "as soon as practicable under the circumstances of a particular case." 29 C.F.R. 825.303(a).  Notice to an employer is considered adequate if given within no more than one or two days after learning of the need for leave. 29 C.F.R. 825.303(a)(b). Once notice is received, an employer is then "expected to obtain any additional required information through informal means" in order to determine if the requested leave qualifies under the FMLA. 29 C.F.R. 825.304(b). *See also Wheeler v. Pioneer Developmental Services, Inc.*, 349 F. Supp. 2d 158, 166 (D.Mass. 2004).

As discussed above, King immediately informed both human resources and Mr. Zambelli of the scheduled spinal surgery in or about March of 2014 and her consequential need for time off in order to heal from the same. Amended Compl. ¶ 13.  King, qualified for leave under the FMLA and was approved for a total of four weeks of leave under the FMLA by the Defendant beginning on or about April 22, 2014. Amended Compl. ¶ 14.  Shortly after returning to work at the end of her four weeks of FMLA leave, on or about June 2, 2014, King was informed that her position had been eliminated. Amended Compl. ¶¶ 14, 19, 24.  Therefore, where the Defendant denied King the benefit of returning her to her previous position, or that of an equivalent, just seven business days after her return to work on or about May 21, 2014, King was denied the benefits afforded to her under the FMLA. *Hodgens*, 144 F.3d at 159.

2. It Is the Defendant's Burden to Establish That the Elimination of King's Position, Just Days after Her Return from FMLA Leave, Was Legitimate.

Finally, the Defendant's argument that King would not have been entitled to reinstatement to her former position had her position been eliminated prior to her return to work is irrelevant. First, King's employment was terminated approximately seven business days *after* returning from FMLA leave – not during her leave.

Amended Compl. ¶¶ 22, 24.  Second, it is the Defendant's burden, not King's burden, to prove that the elimination of King's position was legitimate. "An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration." 29 C.F.R. § 825.216; *see also*, *Gil v. Vortex, LLC*, 697 F.Supp.2d 234 (D.Mass. 2010)("[t]he implementing regulations [of the FMLA] place the burden on [defendant] to prove that the layoff of an employee returning from FMLA leave is legitimate"). The Defendant has failed to satisfy this burden and King has clearly established a prima facie case of interference under the FMLA.

### D.  FMLA Retaliation – (Count VI)

To succeed on a retaliation claim under the FMLA, King must show that she engaged in protected activity; she suffered an adverse employment action; and a causal connection exists between the two.[7] *Mole v. University of Massachusetts*, 58 Mass.App.Ct. 29 (2003). This causal connection may be established if the alleged retaliatory acts are close in time to the plaintiff's protected activity.  *Id*. at 39.  Under this standard, retaliation claims succeed even though the underlying claims of discrimination fail. *See*, e.g., *Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70, 80–85 (1st Cir. 2001).

1. Protected Activity

In the instant matter, King engaged in protected activity when she requested reasonable accommodations, including leave under the FMLA, for her disability and the surgery she underwent on or about April 22, 2014. Amended Compl. ¶¶ 13, 14. In addition to requesting a medical leave of absence, King was given restrictions on bending, lifting and stretching by her physician after undergoing surgery. Said restrictions were to remain in place for the three to four

---

[7] In order to establish a prima facie case of retaliation under the FMLA, a plaintiff must establish that: (1) she availed himself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) "there was a causal connection between [her] protected conduct and the adverse employment action." *See Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc.,* 447 F.3d 105, 107 (1st Cir.2006).

months following surgery (until approximately July/August of 2014). The restrictions were included on King's release to work paperwork which the Defendant required prior to her return to work on or about May 21, 2014. Amended Compl. ¶ 21. Having requested reasonable accommodations for her disability, King engaged in protected activity. *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)("[i]t would seem anomalous … to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge … leav[ing] employees unprotected if an employer granted an accommodation and shortly thereafter terminated the employee in retaliation").

       2.   Adverse Employment Action

Shortly after returning from FMLA leave, on or about May 21, 2014, King was denied reinstatement to her former position (or that of an equivalent). On or about June 2, 2014, just seven business days later, King was informed that the position she had held with the Defendant was being eliminated and, thus, her employment with the Defendant terminated. Amended Compl. ¶¶ 22, 24. Termination, clearly, is an adverse employment action. *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008)(quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

The Plaintiff also asserts that she was subjected to a hostile work environment which constitutes an adverse action as well. See generally, *Ford v. General Motors Corp.*, 305 F.3d 545, 553-54 (6th Cir. 2002). Additionally, the Plaintiff's request for accommodations were ultimately denied when her position was eliminated just seven business days after returning to work on or about May 21, 2014. A denial of a request for an accommodation constitutes an adverse action. *See Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 157 (1st Cir. 2009)("With respect to a reasonable accommodation claim, the third prong of the *prima facie* case can be satisfied by a showing that the employer "despite knowing of [the employee's] alleged disability, did not reasonably accommodate it.").

### 3. Causal Connection

The third element of a prima facie case of retaliation requires the demonstration of a causal connection between the protected activity and the adverse employment action. This element may be satisfied by a close temporal proximity between the protected activity and the adverse employment action. *See Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 168 (1st Cir.1998)("close temporal proximity between two events may give rise to an inference of causal connection."); *Calero–Cerezo,* 355 F.3d at 25 (finding that "sufficient temporal proximity between the protected conduct and the employment action ... [makes] out a prima facie case"); *Surprise v. Innovation Group, Inc. / First Notice Systems, Inc.*, 925 F. Supp. 2d 134, 147 (D.Mass. 2013) ("extremely close temporal proximity" between protected activity and adverse employment actions sufficient to defeat summary judgment). In the instant matter, King was terminated from her employment just seven business day after she returned to work from leave under the FMLA. Amended Compl. ¶¶ 22, 24. Such temporal proximity is sufficient to satisfy the third element of her prima facie case of retaliation. *See Lukacinsky vs. Panasonic Service Co.*, 2004 WL 2915347 *14-15 (D.Mass. Nov. 29, 2004)(fact that plaintiff was terminated one week after returning from FMLA leave gives rise to a reasonable inference that a causal link between the protected activity and the adverse employment action exists and is sufficient to defeat summary judgment).

Moreover, the day before King's medical leave was scheduled to begin, King's supervisor, Mr. Zambelli, instructed the Plaintiff, in a threatening manner, that she had to be on-call twenty-four hours a day during the duration of her medical leave of absence. According to Mr. Zambelli, being "on-call" required the Plaintiff to answer any questions anyone at the Defendant may have and to come in to the office when necessary. The Plaintiff informed Mr. Zambelli that she would not be able to drive after the surgery and that this was part of the reason why she required a medical leave of absence. Without acknowledging the Plaintiff's concern,

Mr. Zambelli reiterated that the Plaintiff needed to be available when needed. The Plaintiff again was harassed and threatened. Mr. Zambelli was essentially stating that if the Plaintiff did not comply with his demands that she would lose her job at the Defendant. The Plaintiff began to worry about her job security at the Defendant. Amended Compl. ¶ 17. Expressions of anger or hostility by management toward a plaintiff's disability and consequential medical leave may also be used to satisfy the causal connection element when the same manager is involved in the termination process. *Id.* (denying summary judgment where manager's comments generally related to plaintiff's request for medical leave and were made around the time plaintiff went out on leave and, thus, "a reasonable jury could find that the comments were made in connection with a request for protected leave"); *see also*, *Garayalde–Rijos v. Municipality of Carolina,* 2014 WL 1270607 at * 8, n .8 (1st Cir. 2014)(five months between protected activity and adverse action sufficient to satisfy temporal proximity at pleading stage, an inference of retaliation is plausible and plaintiff should engage in discovery to acquire any additional evidence); *Trainor v. HEI Hospitality, LLC,* 699 F.3d 19, 28 (1st Cir.2012)(close temporal proximity between protected activity and adverse action alone support an inference of retaliation).

Therefore, given the foregoing, King has clearly pled sufficient facts in her Amended Complaint, which, when taken together, are sufficient to "raise a reasonable expectation that discovery will reveal evidence" of the conduct alleged "mak[ing] the non-innocent explanation [for the Defendant's actions] plausible." *Rodriguez–Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014). Therefore, having "clear[ed] the Fed. R. Civ. P. 12(b)(6) hurdle," the Defendant's Motion must be denied in its entirety and King allowed to proceed through discovery in order to prove her claims against the Defendant. *Id*.

## IV. **CONCLUSION**

For all of the foregoing reasons, the Plaintiff, Katie King, respectfully requests that the Court deny the Defendant's *Partial Motion to Dismiss the Plaintiff's Amended Complaint* [19],

or, alternatively, convert said Motion into one falling under Fed. R. Civ. P. 56, and postpone hearing on any Rule 56 motion until the Parties have conducted discovery and filed the appropriate briefs.

Respectfully submitted,

The Plaintiff
KATIE KING
By Her Attorney

/s/ Michael O. Shea                                   Dated: August 13, 2015
MICHAEL O. SHEA, ESQ.
BBO No. 555474
Law Office of Michael O. Shea, P.C.
3 Crane Park Drive, Suite 7
Wilbraham, MA 01095
Telephone No. (413) 596-8005
Facsimile No. (413) 596-8095
Email: owenshea@aol.com

REQUEST FOR ORAL ARGUMENT

I, Michael O. Shea, Esq., hereby request oral argument on the subject Motion, as oral argument will likely assist the court in a ruling on the Motion.

/s/ Michael O. Shea
Michael O. Shea

CERTIFICATE OF SERVICE

I, Michael O. Shea, Esq., hereby certify that on this 13th day of August, 2015, I served the foregoing document by electronic filing through the ECF system to Counsel of Record for the Defendant.

/s/ Michael O. Shea
Michael O. Shea

29